UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES HAWKINS, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-3112** |
| **COMBE, INC., et al.** | **SECTION: "G"(1)** |

## ORDER

This action arises out of Plaintiffs Charles Hawkins' ("Mr. Hawkins") and Jacqueline Hawkins' ("Ms. Hawkins") (collectively "Plaintiffs") claims for damages following injuries Charles Hawkins sustained after using the hair-dye product "Just For Men."[1] Plaintiffs originally filed this action in the 24th Judicial District Court for the Parish of Jefferson, but Defendants Combe, Inc., Combe Products, Inc., Combe Manufacturing, Inc., Combe International, LTD., and Wal-Mart Stores, Inc. (collectively "Defendants") removed the case to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2] Upon review of this matter, it came to the Court's attention that the Court may not have subject matter jurisdiction. On April 22, 2016 the Court ordered that Defendants submit summary judgement-type evidence regarding the amount in controversy at the time of removal.[3] Defendants filed a memorandum regarding the amount in controversy on May 9, 2016.[4] For the reasons that follow, the Court finds that Defendants have

---

[1] Rec. Doc. 1-1.

[2] Rec. Doc. 1.

[3] Rec. Doc. 4 at 5.

[4] Rec. Doc. 6 at 1.

1

not established by a preponderance of the evidence that the amount in controversy at the time of removal exceeded $75,000. Therefore, the Court lacks subject matter jurisdiction over the above-captioned matter and hereby remands it to state court.

## I. Background

In their petition—which was filed in the 24th Judicial District Court for the Parish of Jefferson on April 14, 2016—Plaintiffs allege that Mr. Hawkins "suffered a severe burn, acute dermatitis and inflammation to his throat," and that he and his wife, Ms. Hawkins, are entitled to damages as a result of the negligence of Defendants.[5] Plaintiffs allege that Mr. Hawkins damages are itemized as follows: (1) past, present, and future physical pain and suffering; (2) past, present, and future mental pain and suffering; (3) permanent disfigurement; (4) loss of enjoyment of life; (5) disability and loss of function; and (6) past, present, and future medical bills.[6] Plaintiffs allege that Ms. Hawkins' damages are itemized as follows: (1) loss of enjoyment of life; (2) disability and loss of function; (3) loss of love and affection; and (4) loss of consortium.[7] In their Notice of Removal filed on April 14, 2016, Defendants assert that it is facially apparent that the amount in controversy exceeds the jurisdictional minimum because the combined value of the Plaintiff's general damages for Mr. Hawkins' physical injuries, both plaintiffs' mental anguish and inconvenience, and attorney's fees and costs will exceed $75,000 if proven.

---

[5] Rec. Doc. 1-1 at ¶XIII - ¶XVII.

[6] *Id.* at ¶XVI.

[7] *Id* at ¶XVII.

On April 22, 2016, this Court ordered the Defendants to submit summary judgment-type evidence regarding the amount in controversy at the time of removal.[8] In its Order, the Court decided that it is not facially apparent that Plaintiff's injuries exceed $75,000.[9] Furthermore, the Court noted "neither the Petition nor the Notice of Removal provides specific information regarding the medical treatment that Plaintiff Charles Hawkins requires, the severity of his injuries or alleged disfigurement, nor have Plaintiffs made any general allegations regarding the amount of their damages."[10] Defendants filed a memorandum regarding the amount in controversy on May 9, 2016.[11] Plaintiffs did not file a memorandum in response.

## II. Parties' Arguments

Defendants argue that Mr. Hawkins' claim of damages for "severe burns" will exceed the jurisdictional requirement because the United States Fifth Circuit Court upheld damages of $55,000 for burns to a plaintiff's hand back in 1974 in *Pellegrin v. J Ray McDermott & Co., Inc., et al.*, and that amount would certainly exceed the jurisdictional requirement in today's dollar value since over forty years have lapsed since the decision.[12]

Defendants argue that the sum of Plaintiff's damages will total more than $80,000 if proven because Mr. Hawkins' claim for damages of "inflammation of the throat" alone will be around $27,500 since that was the amount upheld by the Louisiana Third Circuit Court of Appeal to a

---

[8] Rec. Doc. 4 at 5.

[9] *Id.* at 4.

[10] *Id.* at 5.

[11] Rec. Doc. 6 at 1.

[12] *Id.* at 2 (citing *Pellegrin v. J Ray McDermott & Co., Inc., et al.*, 504 F.2d 884 (5th. Cir. 1974)).

plaintiff in *Lewis v. St. Francis Cabrini Hospital*, which Defendants argue is indicative of Plaintiff's potential award if proven in this case.[13]

Defendants contend that Mr. Hawkins' damages, which were described as "permanent," will exceed the jurisdictional requirement because in a similar case, *Choudary v. P&G-Clairol, Inc.*, the United States District Court for the Northern District of Illinois denied remand on the grounds that the plaintiff in that case, who was also injured by using a hair dye product, described her injuries using the words "severe" and "permanent," which suggested that her damages were significant enough to satisfy the federal amount-in-controversy requirement.[14]

Defendants argue that based on counsel's professional experience, Ms. Hawkins' damages may range from $5,000 to $10,000, if proven.[15] Furthermore, they assert Plaintiffs' damages will likely exceed this range considering their claim for redhibition, comprising "bad faith damages" and "attorney fees and costs,"[16] as well as the potential award for non-pecuniary damages – including mental anguish, aggravation and inconvenience. Defendants contend that the Louisiana Fifth Circuit Court of Appeal has upheld the award of these non-pecuniary damages under Louisiana Civil Code article 2545.[17] Defendants estimate an award for these non-pecuniary damages for the redhibition claim could be around $30,000 based on counsel's review of *Beasley v. Ed's Mobile Homes, Inc.*, in which the Louisiana Third Circuit Court of Appeal upheld a $30,000 damages award to a mobile-home buyer because the seller and manufacturer acted in bad faith by

---

[13] *Id*. at 3 (citing *Lewis v. St. Francis Cabrini Hospital*, 556 So.2d 970 (La. App. 3rd 1990)).

[14] *Id*. (citing *Choudary v. P&G-Clairol, Inc.*, 2008 WL 4779137 (N.D. Ill. 2008)).

[15] *Id*. (citing Exhibit "A," Affidavit of Paul D. Palermo at 4).

[16] *Id*. at 4 (citing Doc. No. 1-1, Petition for Damages and Redhibition at ¶ XV).

[17] *Id*. (citing *Masanz v. Premier Nissan, L.L.C.*, 11-61 (La. App. 5th Cir. 2011), 81 So. 3d 169).

failing to make proper repairs or approve repair of a mobile home when the buyer offered to pay the difference between that amount and the repair bid.[18]

Defendants argue that damages for attorney's fees and costs of expert expenses may total $40,000 or more because this case will require expert testimony on the issues of design defect. Similarly, Defendants assert that the cost of attorney's fees and expert expenses exceeded $30,000 in a previous product liability case that settled before trial between this defense counsel and the current counsel for Plaintiffs.[19]

Defendants argue that Plaintiffs have effectively conceded that the amount-in-controversy is satisfied by failing to allege in their Petition for Damages that their alleged damages were equal to or less than $75,000 as required by the Louisiana Code of Civil Procedure article 893A(1).[20] Defendants argue that the Plaintiffs' failure to comply with Article 893A(1) creates "a strong presumption" in favor of finding that the court has subject matter jurisdiction is present.[21]

### **III. Legal Standard**

Pursuant to Fifth Circuit precedent, whether a removing defendant has satisfied its burden of showing the amount-in-controversy requirement is met depends on whether the plaintiff's complaint alleges a specific amount of monetary damages.[22] However, Louisiana state law does

---

[18] *Id.* at 4–5 (citing *Beasley v. Ed's Mobile Homes, Inc.,* 824 So.2d 383, 2001-1549 (La. App. 3rd Cir. 4/17/02), *writ denied*, 825 So.2d 1170, 2002-1408 (La. 9/20/02)).

[19] *Id*. at 4 (citing *Brumfield v. Winn-Dixie*, (E.D. La. No. 2013-5810); Rec. Doc. 6-1).

[20] *Id.* at 5 (citing *Sweeney v. Petco,* 2009 WL 4019755 (E.D. La. Nov. 19, 2009); *Raggio v. Hartford Steam Boiler Inspection and Insurance Company*, 2006 WL 4059093 (W.D. La. Dec. 29, 2006)).

[21] *Id.* at 6 (citing *Raggio v. Hartford Steam Boiler Inspection and Insurance Company*, 2006 WL 4059093 (W.D. La. Dec. 29, 2006)( finding that La. Code Civ. P. art 891A(1) places affirmative duty on plaintiffs to specify if damages will be greater or less than amount-in-controversy requirement).

[22] *Allen v. R&H Oil & Gaws Co., 63 F.3d 1326, 1335 (5th Cir. 1995).

5

not allow a plaintiff to plead a specific amount of damages.[23] Rather, a plaintiff is <u>required</u> to make "a general allegation that the claim exceeds or is less than the requisite amount" when a specific amount of damages is necessary to establish "the lack of jurisdiction of federal courts due to insufficiency of damages . . . ."[24] When the plaintiffs have alleged an indeterminate amount of damages, as is the case here, the removing defendants must prove that the amount-in-controversy exceeds $75,000 by a preponderance of the evidence.[25] Defendants satisfy this burden either "(1) by demonstrating that it is facially apparent that the claims are likely above $75,000 or (2) by setting forth facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount."[26] "In situations where the facially apparent test is not met, the district court can then require parties to submit summary-judgment type evidence."[27] "[T]he [fact] that the removing party bears the burden of proving the amount-in-controversy does not mean that the removing party cannot ask the court to make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim."[28] "Removal, however, cannot simply be based on conclusory allegations."[29] Defendants must do more than point to a state law that might allow the plaintiffs to recover more than the jurisdictional minimum; the defendants must

---

[23] *See* La. Code. Civ. P. art. 893.

[24] *Id*.

[25] *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000); *see also Simon v. WalMart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen v. R&H Oil & gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[26] *Simon*, 193 F.3d at 850.

[27] *Allen*, 63 F.3d at 1336.

[28] *Robertson v. Exxon Mobil Corp.*, No. 15-30920, 2015 WL 9592499, at *3 (5th Cir. Dec. 31, 2015) (finding that common-sense inferences relating to the cost of cancer treatment and wrongful death from exposure to cancer-causing materials was sufficient to establish the amount-in-controversy requirement).

[29] *Allen*, 63 F.3d at 1335.

submit evidence that establishes that the actual amount-in-controversy exceeds $75,000.[30] That evidence "must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time."[31]

### IV. Analysis

First, Defendants argue that Plaintiffs' attorney's fees "may total $40,000 or more."[32] When a statutory cause of action entitles a party to receive attorney's fees, the amount-in-controversy includes those fees.[33] "In determining reasonable attorney's fees, the [c]ourt principally looks to the amount of time and the legal tasks performed by counsel to collect the debt, evidenced by counsel's records and other documentation."[34] It is difficult to estimate attorney's fees in this instance since trial has not begun and counsel can only speculate as to how much time they will expend and what tasks they will render. However, Defendants estimate that their attorney's fees will be around $40,000 based on the fees accumulated in a similar case they tried against this exact opposing counsel.[35] There is no clear precedent on whether an attorney's estimate of his own fees meets the burden of proof for amount-in-controversy purposes, but "the method of determining the length and breadth of the amount-in-controversy is entirely within the

---

[30] *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

[31] *Allen*, 63 F.3d at 1335.

[32] Rec. Doc. 6 at 4.

[33] *See Graham v. Henegar,* 640 F.2d 732, 736 (5th Cir. Unit A Mar.1981) ("Since the source of the [plaintiff's] substantive rights grants a substantive right to recover attorney's fees in addition to the basic amount of the claim for damages, we conclude that attorney's fees must be included in calculating the amount of the [plaintiff's] claim.").

[34] *Burnside Terminal, a Div. of Ormet Corp. v. SSM Carbon, a Div. of SSM Coal N. Am., Inc.,* 772 F. Supp. 295, 296 (M.D. La. 1991).

[35] Rec. Doc. 6 at 4 (citing *Brumfield v. Winn-Dixie*, (E.D. La. No. 2013-5810)); Rec. Doc. 6-1 at 5.

discretion of the trial court."[36] Even if this Court finds that Defendants' evidence of attorney's fees is accurate, they still must prove by a preponderance of the evidence that Plaintiffs will recover more than the remaining $35,000 in damages.

Defendants cite to several analogous cases in an attempt to satisfy their burden. However, "to satisfy its burden, [the] defendant must do more than merely show that plaintiff could recover more than the jurisdictional amount."[37] In *Powell v. Cadieu*, this Court recently found that Defendants failed to meet their burden of establishing the amount in controversy because they only presented "ranges [that] were calculated by Plaintiff's attorney based on damages awarded to plaintiffs in other cases with injuries similar to those of [plaintiff], rather than [plaintiff's] specific injuries, treatment plan, or medical expenses."[38] Similarly, all Defendants provide in their jurisdictional memorandum are estimates of the Hawkins' damages based on damages awarded to plaintiffs in other cases and not any evidence specific to the Hawkins. There is no detailed explanation in the record nor evidence in Defendants' jurisdictional memorandum about Mr. Hawkins' injuries, how he got them, how long he received treatment, what his medical costs were, or what the impact of those injuries are on his life. Defendants' arguments regarding Ms. Hawkins' damages are unpersuasive because they are solely "based on experience of counsel,"[39] and Defendants fail to introduce any summary judgment type evidence as ordered by the Court.

---

[36] *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990)(quoting *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 667 (5th Cir. 1971)).

[37] *Robichaux v. Wal-Mart Stores, Inc.,* No. 16-1786, 2016 WL 1178670, at *3 (E.D. La. Mar. 28, 2016).

[38] *Powell v. Cadieu*, No. 15-4839, 2016 WL 1042351, at *5 (E.D. La. Mar. 16, 2016); *See also Robichaux v. Wal-Mart Stores, Inc.,* No. 16-1786, 2016 WL 1178670, at *2 (E.D. La. Mar. 28, 2016).

[39] Rec. Doc. 6 at 3.

Not only did Defendants inappropriately base their claims on estimates derived from other cases, but the cases they rely on are distinguishable from the case at hand. For example, Defendants rely on *Pellegrin v. J Ray McDermott & Co., Inc., et al.,* to estimate that Mr. Hawkins' severe burns would be around $55,000.[40] However, the issue in *Pellegrin* was whether the amount of damages awarded in the court below were excessive, not whether the damages satisfied the amount-in-controversy requirement.[41] The court in *Pellegrin* reasoned that the $55,000 in damages awarded was not only justified by the burns themselves, but for "additional damages elements such as pain and suffering and reduced earning capacity," all of which were supported by medical evidence and testimony presented at trial.[42] The Hawkins have not alleged a claim of reduced earnings here and no medical evidence has been presented. Defendants similarly rely upon the Louisiana Third Circuit Court of Appeal opinion in *Lewis v. St. Francis Cabrini Hospital* to support their argument that Mr. Hawkins could be entitled to $27,500 in damages for his inflamed throat injury.[43] *Lewis* was another case regarding excessive damages—not amount-in-controversy. There, the Louisiana Third Circuit found that the damages award was supported by medical testimony; specifically, testimony from three separate doctors who treated plaintiff over a six month span after sustaining his injuries.[44] Here, no evidence has been presented regarding Mr. Hawkins' medical treatment.

---

[40] *Id.* at 2 (citing *Pellegrin v. J Ray McDermott & Co., Inc., et al.*, 504 F.2d 884 (5th. Cir. 1974)).

[41] *Pellegrin*, 504 F.2d at 885.

[42] *Id.*

[43] Rec. Doc. 6 at 3 (citing *Lewis v. St. Francis Cabrini Hospital*, 556 So.2d 970 (La. App. 3rd 1990)).

[44] *Lewis*, 556 So.2d at 974.

Defendants also improperly rely on *Choudary v. P & G-Clairol, Inc.*,[45] which is distinguishable because *Choudary* arose from the United States District Court for the Northern District of Illinois and plaintiffs in Illinois are allowed to allege a specific monetary amount as opposed to plaintiffs in Louisiana who are not permitted to specify a monetary amount pursuant to Louisiana Code of Civil Procedure article 893A(1). Furthermore, the court's reasoning in *Choudary* was not only based on the plain language of plaintiff's injuries being "permanent"—as Defendants assert—but also based on "[plaintiff's] alleged loss of 'large sums of money'- coupled with her apparent acquiescence in the removal of the case."[46] However, "a party may neither consent to nor waive federal subject matter jurisdiction."[47] Moreover, the Hawkins have not alleged a loss of large sums of money like the plaintiffs in *Choudary*.[48]

Next, Defendants argue that Plaintiffs' damages will exceed the amount in controversy requirement because Plaintiff's non-pecuniary damages for mental pain and suffering "may be as much as $30,000."[49] Plaintiffs can receive an award for non-pecuniary damages under Article 2545 in addition to repayment of expenses and attorney's fees when the requirements set forth in Louisiana Civil Code article 1998 are satisfied.[50] Non-pecuniary loss includes mental anguish,

---

[45] *Choudary v. P & G-Clairol, Inc.,* No. 07-6966, 2008 WL 4779137, at *1 (N.D. Ill. Oct. 22, 2008)(plaintiff alleged over $50,000 in damages, and showed she was $10,000 in debt due to medical bills from repeated doctor's visits including four trips to the emergency room).

[46] *Id.* at *2 (court found that plaintiff acquiesced to the removal by waiting until after discovery phase of trial to file the motion for remand in controversy).

[47] *Simon v. Wal-Mart Stores, Inc*., 193 F.3d 848, 850 (5th Cir. 1999).

[48] *See* Rec. Doc. 1-1 at ¶XVI, ¶XVI.

[49] Rec. Doc. 6 at 5 (citing *Lewis v. St. Francis Cabrini Hospital*, 556 So.2d 970 (La. App. 3rd 1990)).

[50] La. Civ. Code Ann. art. 2545, comment B.

aggravation, and inconvenience.[51] Article 1998 places a burden on the purchaser/plaintiff to show that they bought the product that harmed them with the "inten[t] to gratify a nonpecuniary interest" and the seller "knew or should have known, that [their] failure to perform would cause that kind of loss" because of the circumstances surrounding the formation of the sales contract.[52] A non-pecuniary interest is "one intended to satisfy an interest of a spiritual order, such as a contract to create a work of art, or a contract to conduct scientific research, or a contract involving matters of sentimental value."[53]

Defendants argue that Plaintiffs can recover as much as $30,000 for mental anguish because a similar damages award was upheld in *Beasley v. Ed's Mobile Homes, Inc*. The Louisiana Third Circuit Court of Appeal concluded in *Beasley* that the plaintiff did not meet his Article 1998 burden of showing a non-pecuniary interest.[54] Rather, the court's reasoning for upholding the non-pecuniary damages was that it concluded that the defendant who manufactured the mobile home "intended, through his failure, to aggrieve the feelings of the obligee" and thus owed non-pecuniary damages pursuant to an exception under Article 1998.[55] Specifically, the court found that the defendant's failure to approve repairs to the plaintiff/buyer's mobile home because of price when plaintiff/buyer offered to pay the difference in price constituted intentional bad faith.[56]

---

[51] *See Masanz v. Premier Nissan, L.L.C.,* 11-61 (La. App. 5 Cir. 12/13/11), 81 So. 3d 169, 176, *writ denied,* 2012-0108 (La. 3/23/12), 85 So. 3d 91.

[52] La. Civ. Code Ann. art. 1998.

[53] La. Civ. Code Ann. art. 1998, comment C.

[54] *Beasley v. Ed's Mobile Homes, Inc*., 2001-1549 (La. App. 3 Cir. 4/17/02), 824 So. 2d 383, 388, *writ denied*, 2002-1408 (La. 9/20/02), 825 So. 2d 1170.

[55] *Id*. at 388-89.

[56] *Id.* at 384, 389.

*Beasley* is distinguishable from the present case because the Hawkins neither made a claim that Defendants acted intentionally, nor that Mr. Hawkins bought the "Just For Men" product for a non-pecuniary interest. Moreover, "where a claim is made for pain and suffering in a personal injury case, the amount claimed by the plaintiff does not have to be accepted by the Court as the amount in controversy when determining whether or not the Court has jurisdiction."[57]

Finally, Defendants argue that Article 893A(1) places an affirmative duty on plaintiffs to designate that their damages will not exceed $75,000 in order to keep their claim in state court.[58] Therefore, Defendants argue there is a strong presumption in favor of federal jurisdiction because the Hawkins made no such allegation.[59] Defendants rely on *Raggio v. Hartford Steam Boiler Inspection and Insurance Co.* where a judge in the United States District Court for the Western District of Louisiana decided that there was a "strong presumption" in favor of federal jurisdiction because the plaintiff failed to allege that their claim was less than the amount-in-controversy threshold in their state court petition as required by Article 893A(1).[60] *Raggio* is an unpublished district court opinion, and not a controlling authority on the issue. Furthermore, the Fifth Circuit has not squarely addressed this issue, but has held that a plaintiff's Article 893 allegation that their damages are less than the amount-in-controversy may be disregarded if the defendant can show that the amount-in-controversy is satisfied by a preponderance of the evidence.[61] This Court, as

---

[57] *Thoams v. Travelers Ins. Co.*, 258 F. Supp. 873, 876 (E.D. La. 1966) (citing *Leehans v. Am. Emp. Ins. Co.*, 273 F.2d 72, 72 (5th Cir. 1959)).

[58] Rec. Doc. 6 at 5 (citing *Sweeney v. Petco,* 2009 WL 4019755 (E.D. La. Nov. 19, 2009); *Raggio v. Hartford Steam Boiler Inspection and Insurance Company*, 2006 WL 4059093 (W.D. La. Dec. 29, 2006)).

[59] *Id*.

[60] *Raggio*, 2006 WL 4059093 at *1.

[61] *Trahan v. Drury Hotels Co., LLC,* No. 11-521, 2011 WL 2470982, at *4 (E.D. La. June 20, 2011) (citing *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 388 (5th Cir. 2009)).

well as other district courts in the Fifth Circuit, has found that a plaintiff's failure to allege that their damages are under the jurisdictional minimum pursuant to Article 893A(1) is not determinative that the damages sought by a plaintiff exceed $75,000.[62] Therefore, this Court still must look to Defendants' other evidence to determine if they've satisfied their burden of proof, and in this case they have not.

### V. Conclusion

Although Defendants estimate that the total amount of Plaintiff's damages could potentially exceed the amount-in-controversy requirement, the Fifth Circuit has explained that "[a] 'could well' standard sounds more like a 'possibility' standard of proof, rather than a 'more likely or not' [preponderance] standard."[63] The fact that Plaintiffs failed to declare if their alleged damages were under the amount-in-controversy threshold is a factor the Court may consider, but alone is not enough to establish that the jurisdictional amount is satisfied.[64] Defendants have only shown that attorney's fees <u>may</u> exceed $40,000, but have not put forth any summary judgment type evidence specific to Mr. Hawkins' damages like his medical expenses, treatment plans, proof of any present or future harm, etc., to show the remaining value can be recovered. Furthermore, Defendants simply repeated their arguments from the Notice of Removal that this Court already found to be too speculative to permit a determination of whether the amount-in-controversy

---

[62] *Pooley v. State Farm Mut. Auto. In. Co.*, No. 13-0918, 2013 WL 3356873, at *5 (E.D. La. July 3, 2013); *See also Trahan v. Drury Hotels Co., LLC,* No. 11-521, 2011 WL 2470982, at *4 (E.D. La. June 20, 2011) (citing *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 388 (5th Cir. 2009)) (discussing the consensus of United States District Courts' interpretation of Article 893A(1) in the Fifth Circuit).

[63] *Allen v. R&H Oil & Gaws Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995).

[64] *Guidry v. Murphy Oil USA, Inc.*, No. 12-559-SDD, 2013 WL 4542433, at *6 (M.D. La. Aug. 27, 2013)

exceeds $75,000.[65] Considering all of the evidence presented, Defendants have failed to demonstrate by a preponderance of the evidence that Plaintiffs' claims, if proven, would be worth an amount in excess of $75,000. Accordingly,

**IT IS HEREBY ORDERED** that the above-captioned matter is **REMANDED** to the 24th Judicial District Court for the Parish of Jefferson for lack of subject matter jurisdiction.

**NEW ORLEANS, LOUISIANA**, this 18th day of July, 2016.

                                                **NANNETTE JOLIVETTE BROWN**
                                                **UNITED STATES DISTRICT JUDGE**

---

[65] Rec. Doc. 4 at 4; *see also* Rec. Doc. 1 at 4–7.